UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 20-CV-

ANDREW T. DAY,

                              Plaintiff,

v.

City of Key West Mayor
TERI JOHNSTON
(in her official capacity),
Key West City Manager
GREGORY W. VELIZ
(in his official capacity) and
The CITY OF KEY WEST,
FLORIDA, a Florida Municipality,

                              Defendants.

_____/

## VERIFIED COMPLAINT FOR A TEMPORARY RESTRAINING ORDER OR OTHER INJUNCTIVE RELIEF FOR CIVIL RIGHTS VIOLATIONS AND REQUEST FOR AN EXPEDITED HEARING

**COMES NOW**, Plaintiff, Andrew T. Day, by and through undersigned counsel, who brings this cause of action against the above listed defendants and in furtherance thereof would respectfully state and allege the following:

## THE PARTIES

1.      Plaintiff, ANDREW T. DAY, at all times relevant, has been and is currently a resident of Key West, Monroe County, Florida.  Plaintiff Andrew T. Day has signed a Verification Affidavit under oath and it is attached to this complaint and is further identified as Appendix #1.

2.      Defendant MAYOR TERI JOHNSTON, is the elected Mayor of the City of Key West, Florida and is being sued in her official capacity.

3.      Defendant GREGORY W. VELIZ, Manager of the City of Key West, Florida and is

being sued in his official capacity.

4.       Defendant City of Key West, Florida, is a municipality formed under the laws of the State of Florida.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction pursuant to Title 28, United States Code, Sections 1331, 1343(a)(3) and 1367(a) and Title 42, United States Code, Sections 1983 and 1988.

6.       The venue is proper pursuant to Title 28, United States Code, Section 1391(b)(1).

## PRELIMINARY STATEMENT

7.       Andrew T. Day (hereinafter the Plaintiff) brings this cause of action seeking relief in the form of a temporary restraining order or other injunctive relief for civil rights violations against Mayor Teri Johnston, Mayor of Key West, Florida, (in her official capacity), City Manager Gregory W. Veliz, Manager, City of Key West, Florida, (in his official capacity) and the City of Key West, Florida.  This relief is sought to prevent the implementation and enforcement of Emergency Directive 2020-20, that was issued on Friday, December 4, 2020, by Defendant Mayor Teri Johnston and Key West City Manager Gregory W. Veliz.  Emergency Directive 2020-20 violates the Plaintiff's fundamental First Amendment constitutional rights of freedom of speech and the right to peaceful assembly.

8.       This action alleges the Defendants have violated Title 42, United States Code, Section 1983, in that, the Defendants, under the color of any statute, ordinance, regulation, custom, or usage, of any state or territory has subjected and caused the Plaintiff to be deprived of rights, privileges or immunities secured by the Constitution of the United States, specifically those rights guaranteed under the First Amendment to the United States Constitution as applied to the States

under the Fourteenth Amendment, providing for the right of freedom of speech and the right of travel and peaceful assembly.

9.    The Plaintiff respectfully requests that this matter be heard on an expedited basis so that in the event the requested relief is granted, the Plaintiff's rights will not be irreparably harmed.  Pursuant to Local Rule 7.1(d)(2), a separate motion seeking an expedited hearing has been filed in this case.

## FACTS

10.    On Friday, December 4, 2020, Key West Mayor Teri Johnston signed and issued Emergency Directive 2020-20.  The Order was also signed by Gregory W. Veliz, City Manager of Key West, Florida.  Emergency Directive 2020-20 establishes a "curfew" throughout the City of Key West, Florida, for three nights from the hours of 10:00 P.M. to 6:00 A.M. commencing on Thursday, December 31, 2020, at 10:00 P.M. and terminating on January 3, 2021 at 6:00 A. M. (A signed copy of Emergency Directive 2020-20 is attached hereto and further identified as Appendix #2).

11.    The reasons enumerated in Emergency Directive 2020-20 for its creation, is to aid in suppressing the spread of COVID-19 by suppressing the ability of people to gather or celebrate New Year's Eve on Duval Street in Key West or at other locations throughout Key West.[1] Emergency Directive 2020-20 states that enforcement of this Emergency Directive will be carried out pursuant to Chapter 252, Florida Statutes and/or as provided for in City of Key West Emergency Ordinance 20-18.

12.    Chapter 252, Florida Statutes, is titled Emergency Management and provides at Part 1, General Provisions at §252.47 Enforcement: provides for enforcement by the law enforcement

---

[1] Emergency Directive 2020-20 at Paragraph D.

authorities of the state of the orders and rules pursuant to Florida Statutes, §252.31-252.90.  F.S. §252.50 provides that any person violating provisions of §§ 252.31 - 252-90 or any rule or order made pursuant to §§ 252.31 is guilty of a misdemeanor of the second degree punishable as provided for  in §775.082 or §775.083.

13.     On June 29, 2020 at 10:40 A.M. , Key West City Mayor Teri Johnston enacted Key West Emergency Directive 2020-18.  Emergency Directive 2020-18 operated to close all public beaches, parks and their facilities within the City of Key West.  The Directive established a penalty for violation of Emergency Directive 2020-18 of $500.00 fine and imprisonment not to exceed 60 days or both. Emergency Directive 2020-18 was incorporated into Emergency Directive 2020-20 and provides for a fine and incarceration of violation of the curfew provisions of Emergency Directive 2020-20.

14.     Emergency Directive 2020-20 restricts and criminalizes any and all movement of the Plaintiff  outside of his residence and effectively detains him in his residence during the curfew hours.  Emergency Directive 2020-20 is a complete bar to the plaintiff's ability to travel outside of his residence for any personal, social, or  recreational reason and in fact, there is no exception for travel to seek medical care.  These restrictions will extinguish the constitutionally guaranteed First Amendment rights of freedom of speech and peaceful assembly. These rights are being taken away from the Plaintiff for eight hours per day for three consecutive nights.

15.     Emergency Directive 2020-20 was unilaterally enacted by the Mayor under her Executive Powers two days following a Key West City Commission meeting that was held on Wednesday, December 2, 2020.  The commission meeting was video recorded and appears on the website for the City of Key West and is available for public viewing.  The video has been viewed

by the Plaintiff and the Plaintiff personally attended the meeting.

**Dec. 2, 2020, Key West City Commission Meeting
and COVID-19 Update by Dr. Mark E. Whiteside**

16.     During the December 2, 2020 Key West City Commission meeting, Dr. Mark Eric

Whiteside[2] MD, MPH (Medical Director for the Florida Department of Health in Monroe County,

Florida), appeared by video.  Dr. Whiteside made a presentation and was asked a number of

questions by the mayor about the COVID-19 situation in Monroe County. The following is a

synopsis of the relevant information supplied by Dr. Whiteside:

> A.      Dr. Whiteside said that there were active transmissions in Monroe County,
> and Monroe County was better than some places and worse than other areas.
> He said Monroe County is not dissimilar to the rest of the country.
>
> B.      Dr. Whiteside stated in November there were 1,000 cases in Monroe County
> by the end of November with a little over a 10% positivity rate and he said
> that wasn't good, but areas in the west, upper and mid-west of the country
> with higher positivity rates. He said Monroe was behind certain parts of the
> country. He said the rate was 65 per 100,000 population down to 45 per
> 100,000 population.  Dr. Whiteside opined that cases will probably increase
> in Monroe County like the rest of the country for the next two to three
> months.
>
> C.      Dr. Whiteside said that there is certainly active transmission in the
> community. Dr. Whiteside said that up to now the Monroe County Health
> Department has kept up with identifying positives, isolation and tracing
> contacts and quarantine and monitoring and all the rest, but it is becoming
> increasingly difficult to do that effectively and up to now the Health
> Department has done the best they could. If you want to color code it,
> Monroe County is not in the green zone it is at least in the yellow zone and
> maybe some flashing red ahead but it was not dissimilar to the rest of the
> country with active and pretty consistent transmission.

---

[2]Dr. Mark Eric Whiteside, MD, MPH, has been the medical director of the Florida Department of Health in Monroe County, Florida since 2008.  He has worked with local health departments including Palm Beach, Miami-Dade and Monroe Counties since the 1980s.  He is trained in infectious and tropical diseases and has been involved in research and clinical work with HIV and AIDS since the very beginning of the epidemic.  He has also done work and research with various arboviruses including Dengue.  The source of this information was the website for the Florida Department of Health in Monroe County under the tab "About us."

D.      The Mayor asked Dr. Whiteside what he anticipated seeing from Thanksgiving? Dr. Whiteside responded that he didn't expect a major surge but probably added cases two or three weeks afterwards because of less testing around the holidays. Experts say it is a surge on top of a surge.  The Mayor then asked Dr. Whiteside do you have any sense of where our community spread is coming from, what the source is?  Dr. Whiteside said most of it is community spread, residents the big majority, families are heavily involved and originally it was spread from the outside but most of the spread is among residents. He continued by stating in the schools, most children in lower classes were getting it from family members at home but they did not have any significant classroom spread. In the secondary high schools some spread was from extra curricular activities like sports and cheerleading and things like that.  Not much spreading within the classroom setting in the schools.  Most of it is community spread.

E.      Dr. Whiteside said personal responsibility is important and that wearing masks was crucially important, along with distancing, hygiene, avoiding large crowds or close spaces to protect ourselves, family and community at large. He said there was no debate on masks. They are the mainstay, but they are not perfect, all masks are not the same, but certainly masks reduce the virus coming in especially when both people have masks on. Masks are the mainstay and he suggested lots of public messaging with New Year's Eve coming up and said there should be a focus on basic old fashioned public health measures.

F.      Dr. Whiteside was asked if the Health Department is telling people with underlying conditions, seniors and the most vulnerable to stay at home.  Dr. Whiteside responded that yes, with the big event coming up, advisories should be given to seniors and high risk group people and seniors and those with underlying medical conditions should avoid large gatherings and to stay at home and avoid even family gatherings as family gatherings are a major means of transmission.

G.      A commissioner commented that since Dr. Whiteside mentioned New Year's Eve, should they discuss the Health and Business Advisory Committee and do they want to ask Dr. Whiteside if he or if the health department supports the recommendations coming from the Health and Business Advisory Committee.  He also said he didn't want to steal the thunder from Miss Levy and the Health and Business Advisory Committee.

H.      The Mayor stated that she wanted to follow-up with Dr. Whiteside about a really simple statement he just made; "avoid large gatherings."  She said she wasn't sure what constituted a large gathering in the city of Key West more

than New Year's Eve.  She didn't want a 14 block Duval Street, but she didn't want to lose that statement Dr. Whiteside just made because it is the primary concern of everyone sitting up there (on the dais).

I.      Another commissioner asked Dr. Whiteside what the city and the commission or management team could do to help.

J.      Dr. Whiteside said everyone needed to be on the same wavelength and messaging was the key and public information and a "heads-up' is important. Dr Whiteside mentioned committee recommendations from an earlier meeting that day (Health & Business Advisory Committee) and he said "we're basically in full agreement with the recommendations from today's earlier meeting that Lisa will be talking about" (Lisa Levy, Health & Business Advisory Committee presentation follows below).

K.      Dr. Whiteside said there is no perfect plan, there will be increased transmissions no matter what you do.  He said that we have to do the best that we can and said "it's not feasible to cancel New Year's Eve, obviously we can't seal ourselves off from the rest of the world." He said that we just have to devise the best plan that we can and I'm certainly in agreement with those measures (from Health & Business Advisory Committee).  Dr. Whiteside said that generally you have to understand that we're really not containing this virus anywhere in the United States and the base line is not down low enough.  We're paying the price and we've gone from containment to really mitigation and that is what we're trying to do going forward to reduce as much transmission with potential disease and death moving forward.

L.      A commissioner asked Dr. Whiteside if the hospital color code had gone from green to yellow.  Dr. Whiteside said he wasn't talking about the hospital earlier, he was talking about the community.  He said the hospital has a different system and they're still in green. Dr. Whiteside said he was looking at those measures like cases per 100,000, positivity new cases so forth, those kind of metrics.

M.     The Mayor asked  Dr. Whiteside if it was the case that the hospital numbers don't necessarily indicate what is going on in the City of Key West as far as positivity rate transmission?  Dr. Whiteside said he thinks it is different and lot of changes that are going to be occurring there. He said it is a little bit of a lagging measure and certainly deaths and with more positive individuals then a very small percent of them end up hospitalized and maybe 1 in 100 of those will succumb.

N.      Dr. Whiteside said that mortality rates in hospitals have gone way down.

They have gotten much better at treatment. But, that could change as more people end up in hospitals.  Dr. Whiteside said deaths will go up in Monroe County like everywhere else and it will be due to lack of availability of trained staff.  That will be the impediment in the future. The death rate will go up again across the country.  Dr. Whiteside said there are other metrics, and benchmarks  that we should have had and followed from the beginning, like gradual re-opening that we didn't follow.  Like positivity rates, cases per 100,000 and so on.

O.   The Mayor asked Dr. Whiteside if he would "gear" a lot of decisions around the positivity rate. Dr. Whiteside replied, yes, in new cases. The Mayor then said, "can I ask you a really simple straightforward question?" "Does less people mean less transmission?" Before the Dr. could answer, the Mayor said, "I'm coming right back to New Year's Eve because that is going to be the bulk of our conversation this evening." The Mayor said that "we're looking at adding thousands and thousands of people on our streets for New Year's Eve." "Does less people mean less transmissions?"  Dr. Whiteside replied yes, and obviously crowds and events are big spreaders and it's people "swapping secretions."

P.   The Mayor said, "We're talking about large events, but we're talking about a unique large event in a small community, in a small confined area where everyone is drinking where most masks are going to be down, I can't describe it in any other way other than a major super spreader event."

Q.   Dr. Whiteside replied, "well I'm sure there will be more transmissions, but I think, again, we can't cancel New Year's Eve and I think that some of the recommendations that will be discussed are maybe the best we can do honestly."

R.   The Mayor replied, we know we can't cancel New Year's Eve it will come like Fantasy Fest came, what we're trying to figure out though is will less people create a more safe situation for the City of Key West, the residents, the service workers and our visitors?

S.   Dr. Whiteside replied, yes the big thing is the crowds and big events.  Again, those basic issues, people wearing masks and proper distancing.

T.   That concluded the presentation and questioning of Dr. Whiteside.

**Health & Business Advisory Committee New Year's Eve Recommendations**

17.   The commission meeting then moved on to Item 6 on the Agenda which was the

Health and Business Advisory Committee update on New Year's Eve.  This was also video recorded and is available on the website for Key West and is available for public review. The Plaintiff has viewed the video and  personally attended the meeting. The presentation was given by Ms. Elisa Levy who was a member of the Committee and who also operates a consulting business in Key West.  The following is a synopsis of the Committee presentation.

18.     Ms. Levy presented a slide showing the names of the members of the Committee. It is noted that among the 13 members of the Committee, the list included Dr. Mark E. Whiteside; two additional members of the Monroe County Department of Health; a doctor from the Lower Keys Medical Center, a Key West Epidemiologist; the chief of the Key West Police Department; members from restaurant and bar associations; and local business people.

19.     Ms. Levy explained the Committee was formed on November 19, 2020, at the request of the Mayor and the first task was to make a recommendation to the Mayor and City Commission on New Year's Eve.  Ms. Levy explained that she called all the Committee members and presented them with the following question. "What can we do to keep Key West Open and Safe?"  She said the idea was that they weren't  going to ameliorate the problem, they were going to mitigate the problem.

20.     Ms. Levy then stated that the owners and/or managers of several of the major bars and restaurants in Key West that would be impacted were interviewed and asked the same question. After the interviews, Ms. Levy said she had nine (9) concrete viable suggestions. Those suggestions were cleared through the Key West City Attorney to ensure they were viable and then were sent out in a survey to Key West residents.  Responding to the survey were 1,372 residents of Key West and the Committee took those findings and collectively discussed the survey responses and other options.

The Committee then put together a final list of seven (7) recommendations for New Year's Eve.

Those recommendations were then presented to the Mayor and Commission.    Those

recommendations are as follows:

I.      <u>Move People Outside</u>: Open Duval Street and close it down to all vehicular traffic. Make it available for use by pedestrians to keep people outside for social distancing. Encouraging people to be on the street in the open.

II.      <u>Help Restaurants and Bars Lessen Indoor Capacity</u>: This will allow people to congregate outside and provide for more space inside the establishments so people won't be so close together. Encourage them to limit indoor capacity and to the extent possible move tables outside.

III.      <u>Cancel Outdoor Festivities</u>: Shut down all outdoor special events (Sushi, the Wench, the Conch Shell dropping, etc.) Shut down anything that would congregate people at a specific time and location.

IV.      <u>Instill a 1:00 A.M. curfew</u>: 1:00A.M. was a good compromise and would be similar to other parts of South Florida.  Visitors wouldn't come to Key West because they could party later than other locations in South Florida and would also allow people to enjoy their New Year.

V.      <u>Send an Advisor</u>: To elderly, immune-compromised and disabled community members suggesting that they stay home and/or remain masked up in public.

VI.      <u>Abundant Signage to Visitors</u>: Bombard the city with messaging (signs everywhere possible) to "Mask Up" and "Social Distance."

VII.      <u>Limit Capacity at Home and Vacation Rental Parties</u>: Message and enforce the 10 person limit to home and vacation rental parties.  Much of the virus is spread at home functions and this would help to mitigate it.

21.     A slide Ms. Levy used in her presentation stated that on December 3, 2020, Monroe

County had an infection rate of 45.2 per 100,000 residents and on November 21, 2020, the infection

was 65.6 per 100,000 residents. A copy of the chart listing the seven recommendations of the Health

and Business Advisory Committee is attached to this verified complaint and is further identified as

Appendix #3.

22.     The Plaintiff alleges the Defendants have violated Plaintiff's First Amendment constitutional rights of freedom of speech and freedom to peaceful assembly in the following manner:

23.     The seven restrictions that the Health and Business Advisory Committee recommended would have mitigated COVID-19 transmission without restricting the right of the Plaintiff to exercise his First Amendment constitutional rights.  The Defendants' refusal to implement those reasonable, narrowly tailored restrictive recommendations resulted in a complete ban on any exercise of the Plaintiff's above mentioned rights during the curfew periods ordered in Emergency Directive 2020-20.  Based upon all of the facts and circumstances present,  Emergency Directive 2020-20 is overly harsh, restrictive and constitutionally unjustified under the circumstances present here.

**COUNT ONE - 42 U.S.C. § 1983**
**(Constitutional Right to Freedom of Speech)**

24.     Paragraphs 1-23 are incorporated herein.

25.     The Plaintiff has a basic, natural right to express himself and to speak with friends, associates and others in legally accessible public spaces and forums. The Plaintiff has the right to travel, meet, and converse with those people for any lawful purpose or activity at any time of the day or night at his choosing.

26.     The Defendants, under the color of law, did unlawfully through the creation, of Emergency Directive 2020-20, extinguish the right of the Plaintiff to freedom of speech and the right to travel to those legally accessible public spaces and converse with those friends, associates or others, during the time periods enumerated in Emergency Directive 2020-20.  The Defendants

have no compelling, legitimate or constitutionally proper or rational reason to create and implement

Emergency Directive 2020-20.

## COUNT TWO - 42 U.S.C. § 1983
### (Constitutional Right to Travel and Peaceably Assemble)

27.     Paragraphs 1-26 are incorporated herein.

28.     The Plaintiff has a basic, natural right to travel freely upon legally accessible public

ways, lands, streets, avenues, alleys, sidewalks, thoroughfares, parks and other areas used by

pedestrians and motorists for any lawful purpose at any time of the day or night of his choosing.

29.     The Plaintiff has a basic right to travel to stores, shops, places of entertainment,

places that prepare and serve food and beverages, places to purchase food and medicine and other

retail establishments and locations of recreation or any other legally accessible location for any

lawful purpose at any time of the day or night of his choosing.

30.     The Defendants, under the color of law, did unlawfully through the creation of

Emergency Directive 2020-20, extinguish the right of the Plaintiff  to travel to those legally

accessible public spaces and to peacefully assemble with those friends, associates or others, during

the time periods enumerated in Emergency Directive 2020-20.  The Defendants have no compelling,

legitimate or constitutionally proper or rational reason to create and implement Emergency Directive

2020-20.

## COUNT THREE
### (Preliminary and Permanent Injunctive Relief or Temporary
### Restraining Order Against the Defendants to prevent the
### implementation of Key West Emergency Directive 2020-20 and its Curfew)

31.     Paragraphs 1-30 are incorporated herein.

32.     The Defendants are state actors for purposes of the First and Fourteenth

Amendments to the United States Constitution.

33.     Key West Emergency Directive 2020-20, including its curfew order, was issued under the color of law by the Defendants and it unlawfully restricts the exercise of fundamental First Amendment rights guaranteed under the United States Constitution.

34.     The right to exercise the liberties safeguarded by the First Amendment lies at the foundation of free government by free men.  The First Amendment is applicable to the States by reason of the Fourteenth Amendment. (*Adderley v. Florida,* 385 U.S. 39 (1966)).

35.     Plaintiff, Andrew T. Day, will suffer immediate and irreparable harm in the absence of a preliminary injunction or a temporary restraining order by virtue of the fact that the curfew provisions of Key West Emergency Directive 2020-20 will be effective at 10 P.M. on December 31, 2020.  In the absence of such relief, the Plaintiff will be denied his fundamental First Amendment rights of freedom of speech and right to peaceably assemble.

## Conclusion

36.     Notice of this law suit has been provided to the Defendants immediately prior to the filing of this suit by the electronic delivery of a non-file stamped copy of this Verified Complaint to the Defendants.  A hard paper copy of the filed and stamped Verified Complaint with summonses will be served on the Defendants upon receipt of the filed stamped copy of the Verified Complaint from the Clerk's Office after filing this cause of action.

37.     Due to the time constraints present in this case, the Plaintiff would respectfully request an expedited hearing so the rights of the Plaintiff may be safeguarded.  Pursuant to Local Rule 7.1(d)(2), a separate motion seeking an expedited hearing has been filed in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the facts, circumstances, evidence, legal precedent and argument

listed above, the Plaintiff respectfully request that this Honorable Court:

B.      Find that Emergency Directive 2020-20 is an unconstitutional restriction of the

Plaintiff's fundamental First Amendment rights under the color of law.

C.      Issue a temporary restraining order or other injunctive relief to enjoin the

implementation and enforcement of  Key West Emergency Directive 2020-20.

E.      That this Court reserve jurisdiction to award court costs and attorney's fees to

Plaintiff.

F.      Award any such other relief as this Court deems fair and equitable.


Dated: December 21, 2020            Respectfully submitted,
       Miami, Florida

               By:    /s/ *William Leonard Athas*
                      ATHAS LAW FIRM, PLLC
                      William L. Athas , Esq.
                      Florida Bar No. 0078247
                      701 Brickell Avenue, Suite 1550
                      Miami, Florida 33131
                      Telephone: (954) 292-7745
                      athaslaw@aol.com
                      Attorney for Plaintiff ANDREW T. DAY

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

I certify that following the receipt of a file stamped copy of the Verified Complaint, I will cause a file stamped copy of the Verified Complaint to be personally served on the listed defendants electronically and by personal service.

I also certify that pursuant to Local Rule 24.1(b) and Fla. Statues §86.09, that upon receipt of a stamped copy of the Verified Complaint by the Plaintiff a stamped copy of the foregoing Verified Complaint will be served via U. S. Mail to the Attorney General for the State of Florida and to the State's Attorney for the Florida 16th Judicial Circuit, at Key West, Monroe County, Florida.


s/ William Leonard Athas
William Leonard Athas

## SERVICE LIST

**Andrew T. Day,**
**v.**
**City of Key West Mayor TERI JOHNSTON, (in her official capacity),**
**Key West City Manager GREGORY W. VELIZ (in his official capacity) and**
**The CITY OF KEY WEST, FLORIDA, a Florida Municipality..**

Teri Johnston,
Mayor of Key West Florida
1300 White Street
Key West, Florida 33040
Mailing address:
P. O. Box 1409
Key West, Florida 33041-1409
Telephone: (305) 809-3844
Email: tjohnston@cityofkeywest-fl.gov
Alternate Email:
mayor@cityofkeywest-fl.gov

George W. Veliz,
City Manger, City of Key West
1300 White Street
Key West, Florida 33040
Mailing address:
P. O. Box 1409
Key West, Florida 33041-1409
Telephone" (305) 809-3886
Email: Citymanager@cityofkeywest-fl.gov

Shawn D. Smith
Key West City Attorney
1300 White Street
Key West, Florida 33040
Mailing address
P. O. Box 1409
Key West, Florida 33401-1409
Telephone: (305) 809-3770
Email: sdsmith@cityockeywest-fl.gov