UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 4:20-cv-10151-JLK

ANDREW T. DAY,

    Plaintiff,

v.

City of Key West Mayor TERI JOHNSTON,
*in her official capacity*; Key West City Manager
GREGORY W. VELIZ, *in his official capacity*;
and CITY OF KEY WEST, a Florida Municipality,

    Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER OR OTHER INJUNCTIVE RELIEF**

THIS CAUSE is before the Court on Plaintiff Andrew T. Day's Motion for Temporary Restraining Order or Other Injunctive Relief (Doc. No. 8), filed December 22, 2020. The Court has carefully considered the entire record filed as of December 29, 2020. The Plaintiff, and indeed the entire case, impelled expedited court consideration of the merits of the case, as set forth by Plaintiff after joint consultation with attorneys for all parties. Oral argument via Zoom was scheduled for December 29, 2020 as the earliest possible date that accommodation of the urgency would permit. The Court held full and complete oral argument as scheduled on December 29, 2020.

## I.    BACKGROUND

On December 21, 2020, Plaintiff filed the above-styled action seeking to enjoin the City of Key West from enforcing a citywide curfew around the upcoming New Year's holiday.

Specifically, Plaintiff seeks to enjoin on constitutional grounds the implementation and enforcement of Emergency Directive 2020-20 (the "Directive"), issued by City of Key West Mayor Teri Johnston on December 4, 2020.[1] In pertinent part, the Directive provides:

> Commencing on Thursday, December 31, 2020 at 10:00 p.m. and terminating on Sunday, January 3, 2021 at 6:00 a.m., a curfew is hereby imposed for the City of Key West, effective from 10:00 p.m. each night through 6:00 a.m. the next morning. All non-essential businesses shall close on or before 10:00 p.m. each night. Persons shall be in residences or lodging establishments no later than 10:30 p.m. each night. During the period of such curfew, no person shall make use of any street or sidewalk for any purpose, except police, fire rescue, first responder, medical, health care, media, and utility service personnel. *See* Directive, Doc. No. 12-1 ¶ C.

The stated goal of the Directive is to mitigate the spread of the novel coronavirus (COVID-19) by preventing large crowds of people from gathering in downtown Key West on Duval and adjoining streets in the traditional New Year's Eve festivities. *Id.* at 2.

Plaintiff, a lawful resident of Key West, Florida, maintains that the Directive infringes on his constitutional rights of freedom of speech, travel, and freedom of assembly in violation of the First Amendment and 42 U.S.C. § 1983. Accordingly, Plaintiff requests a Temporary Restraining Order against the enforcement of the Directive. *See* Docs. No. 8, 13. Plaintiff seeks expedited review of his application since the New Year's holiday is rapidly approaching. *See* Compl. ¶ 9. For the reasons stated herein, the Court finds that Plaintiff's Motion should be denied and injunction against the Mayor's Directive should not issue.

---

[1] On December 28, 2020, the Mayor and the City Manager issued Amendment 1 to Emergency Directive 2020-20. *See* Doc. No. 16-1. The Court has carefully reviewed the amendment and finds that it does not materially alter the Court's analysis of whether the Directive is constitutional. For ease of reference, any mention of "the Directive" throughout this opinion will refer to the original Directive and its corresponding amendment, read in conjunction with one another.

## II.     LEGAL STANDARD

A district court may enter a temporary restraining order without notice to the adverse party only in limited circumstances. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). According to Federal Rule of Civil Procedure 65(b), a temporary restraining order may issue only if: "(A) specific facts in an affidavit or a verified complaint show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." If the adverse party has received notice, a request for a temporary restraining order will be treated as a request for a preliminary injunction under Federal Rule of Civil Procedure 65(a), which requires the plaintiff to demonstrate: "(1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest." *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009). "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunction proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.3d 23, 26 (1st Cir. 1986)).

## III.     DISCUSSION

On December 22, 2020, the Court held a joint telephonic status conference with counsel for each side to discuss expedited procedure governing this case. The City Attorney for the City of Key West entered a Notice of Appearance later that day, indicating that he represented all three

defendants in this action. Thus, since Defendants have received notice, the Court will treat Plaintiff's request for a temporary restraining order as a request for a preliminary injunction.

Whether Plaintiff is entitled to a preliminary injunction turns on two questions: (1) whether Plaintiff has suffered an "injury-in-fact" sufficient to confer Article III standing, and (2) whether Plaintiff has established a likelihood of success on the merits under the "intermediate scrutiny" test applicable to content-neutral regulations of speech. The Court concludes that Plaintiff has standing to bring this action but has failed to establish the likelihood that he will prevail on the merits for injunctive relief.

### A. Whether Plaintiff Has Standing

Federal courts may only decide "Cases" and "Controversies" under Article III of the United States Constitution. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). According to the Supreme Court:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citations omitted).

"Standing to bring and maintain a lawsuit is a fundamental component of a federal court's subject matter jurisdiction." *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1281 (M.D. Fla. 2016). "[A] [federal] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into

4

subject matter jurisdiction *sua sponte* whenever it may be lacking." *University of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Here, Plaintiff argues that he has standing as a resident of the City of Key West who is subject to the Mayor's Directive. In his Verified Affidavit, Plaintiff attests that he has "personal knowledge of [his] activities, [his] travels, and [his] intentions to move about alone and/or with [his] wife and two children and to meet and freely converse with other friends, associates and others and to peacefully assemble in legally accessible pubic locations." Day Aff., App. 1, Doc. No. 10-1. And since the Directive prohibits this kind of speech and assembly, Plaintiff contends that he has standing to sue. The Court agrees. Although Plaintiff has not suffered an injury-in-fact as of yet, Plaintiff has articulated a threatened injury that is sufficiently imminent to satisfy Article III's case-or-controversy requirement. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–129 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat— for example, the constitutionality of a law threatened to be enforced."); *Steffel v. Thompson,* 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Harrell v. The Florida Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) ("Under controlling case law, we apply the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced.").

### B.  Whether an Injunction Should Issue

Having subject matter jurisdiction, the Court now considers whether Plaintiff is entitled to an injunction. To obtain a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits. After careful consideration, the Court concludes that Plaintiff has not

established this requisite element to entitle him to a temporary restraining order or other injunctive relief.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See De Jonge v. Oregon*, 299 U.S. 353, 364–65 (1937) (incorporating right of assembly); *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (incorporating right of freedom of speech).

The right to free speech is fundamental to our nation's concept of ordered liberty. This is no less true during a pandemic. But where a government regulates speech without reference to the content of the speech, the traditional strict scrutiny does not apply. Instead, courts review these "time, place, and manner" regulations with intermediate scrutiny: the government must show (1) a substantial government interest, (2) the regulations are narrowly tailored to serve that interest, and (3) the regulations leave open ample alternative channels of communication of the information.[2] *McCullen v. Coakley*, 573 U.S. 464, 478 (2014) (citing *Ward v. Rock Against*

---

[2] The City urges the Court to apply rational basis review rather than intermediate scrutiny. In support, the City cites to *Smith v. Avino*, where the Eleventh Circuit upheld a curfew imposed by Dade County in the wake of Hurricane Andrew. 91 F.3d 105, 109 (11th Cir. 1996) ("[W]hen a curfew is imposed as an emergency measure in response to a natural disaster, the scope of review in cases challenging its constitutionality is limited to a determination whether the [executive's] actions were taken in good faith and whether there is some factual basis for the decision that the restrictions . . . imposed were necessary to maintain order.") (internal quotation marks omitted). The Court finds that *Avino* is inapposite since COVID-19, while deadly and severe, does not present the same concerns of looting, chaos, and violence during riots that may result from a natural disaster.

*Racism*, 491 U.S. 781, 791 (1989)). Content-neutral regulations of the right of assembly are also reviewed with intermediate scrutiny. *See Frisby v. Schultz*, 487 U.S. 474, 484 (1988).

Here, the City of Key West has a substantial government interest in preserving and protecting the public health of its citizens. In the Directive, the Mayor observes that "COVID-19 is a severe acute respiratory illness that can spread among humans through respiratory transmission and causes symptoms similar to those of influenza and, in some cases, cause death." Doc. No. 12-1 at 1. The Mayor also observes that the Centers for Disease Control ("CDC") has cautioned against large gatherings of people to avoid spreading COVID-19 at these events, and that large crowds have gathered on Duval Street to celebrate the New Year's holiday in the past. *See id.* at 1–2. If "stemming the spread of COVID–19 is unquestionably a compelling [government] interest" as the Supreme Court has held,[3] it is most certainly a substantial government interest as well. *See, e.g.*, *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641–42 (1994) (requiring a "compelling" government interest under strict scrutiny review, but only requiring a "substantial" government interest under intermediate scrutiny review).

The Court also finds that the Directive is narrowly tailored to serve the City of Key West's interest in protecting public health. "[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Here, the Directive prohibits public gatherings from 10:00 PM on December 31, 2020 until 6:00 AM on January 1, 2021, and it continues for the following two evenings, terminating at 6:00 AM on January 3, 2021. It restricts public speech and assembly for

---

[3] *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

a total of twenty-four hours (comprised of three eight-hour periods) during one of the busiest annual events that the City experiences. [4] The City has *not* prohibited public gatherings indefinitely. Instead, it has prohibited public gatherings during the brief timeframe within which tourists and partygoers typically gather in the street to celebrate the New Year. Clearly, the City's interest in protecting public health would be achieved far less effectively if crowds of people were to gather in the street for the usual festivities. Moreover, the City has exempted essential businesses and religious services from the curfew. And while Plaintiff contends there are less restrictive means to accomplish the City's goal, "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests *but [ ] it need not be the least restrictive or least intrusive means of doing so.*" *Ward*, 491 U.S. at 798 (emphasis added).

      Finally, the Court finds that the Directive leaves open ample alternative channels of communication of information. While Plaintiff may not be free to speak with friends and associates in public places as he normally would, Plaintiff may still voice his displeasure on any social media platform and reach what is potentially a larger audience for his desired speech, just as Plaintiff may use social media and technology to virtually "assemble" with friends and colleagues during this very brief period of time. To be clear, the Court is not suggesting that in-person public speech may always be prohibited so long as the speaker can use social media to express his or her views. On the contrary, the Court is finding that in this narrow circumstance where the City has a substantial interest in protecting public health, Plaintiff has an alternative way to express his

---

[4] "WHEREAS, in the past, New Year's Eve celebrations and the celebrations surrounding that day have included gatherings of thousands of people on or near Duval Street and/or celebrations and gatherings of large groups of people throughout the City of Key West." Directive at 2, Doc. No. 12-1.

viewpoints and "assemble" with friends and colleagues without undermining the City's legitimate government interest.

### IV.   CONCLUSION

The City of Key West has a substantial government interest in preserving and protecting the health of its citizens. The Key West Emergency Directive is narrowly tailored to an eight-hour period covering three evenings, and it leaves open ample alternative modes of communication and assembly. The Directive therefore survives intermediate scrutiny.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that Plaintiff's Application for a Temporary Restraining Order or Other Injunctive Relief be, and the same is, hereby **DENIED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 29th day of December, 2020.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**cc:**   **All counsel of record**